UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| SANDRA SHORT, DAVID SHORT, DONALD SHORT, and SARAH SARBACKER,<br><br>Plaintiffs,<br><br>vs.<br><br>BILLINGS COUNTY, a political subdivision of the State of North Dakota, LESTER IVERSON, Billings County Commissioner, in his official capacity, STEVEN KLYM, Billings County Commissioner, in his official capacity, and DEAN RODNE, Billings County Commissioner, in his official capacity,<br><br>Defendants. | Case No. 1:23-cv-00143-CRH<br><br><br>**DEFENDANTS BILLINGS COUNTY, LESTER IVERSON, STEVEN KLYM, AND DEAN RODNE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendants, Billings County, Lester Iverson, Steven Klym, and Dean Rodne (collectively "Billings County"), respectfully submit this Reply Memorandum of Law in Support of their Motion to Dismiss Plaintiffs, Sandra Short, David Short, Donald Short, and Sarah Sarbacker's (collectively "Plaintiffs") Complaint. Billings County herein incorporates by reference the pleadings, filings, and all other documents it has submitted in this matter.

**FACTUAL BACKGROUND**

Billings County herein adopts the recitation of facts it provided in its previous briefing in this lawsuit, and those provided in court proceedings preceding the present matter. See Doc. No. 35, Defendants Memorandum in Support of Motion to Dismiss; Doc. No. 29, Response in Opposition to Plaintiffs' Motion for Preliminary Injunction; Short et al. v. Billings County, Case No. 1:20-cv-00079, Doc. No. 29, Report and Recommendations by Magistrate Judge Charles S. Miller, Jr.

Plaintiffs contradict their prior representations to this Court in stating that when Billings County sent Plaintiffs a letter to open easement negotiations in June of 2023, that the offer "gave the County an open-ended timeline by which to begin construction." Doc. No. 39, p. 6. Notably, Plaintiffs directly cite to Paragraph 113 of their Complaint, which provides the "letter offered an option contract… [which proposed] in exchange for $1,000 earnest money the County would have five years to finalize the conditions precedent to starting construction on the LMRC." Id. (citing Doc. No. 1, ¶ 113) (emphasis added). There was a specific timeframe included for construction, contrary to Plaintiffs' assertions.

Additionally, Plaintiffs repeatedly claim that Billings County initiated eminent domain proceedings before Plaintiffs declined the Board's June 23, 2023 offer to purchase the property for $20,000 per acre. Doc. No. 39, 6. The Board did not move forward with any eminent domain proceedings under N.D.C.C. Ch. 11-10 until after Plaintiffs rejected the offer on August 3, 2023. See Doc. No. 35, p. 4. There is nothing surprising about this scenario. Once Plaintiffs refused to negotiate, the County moved forward with a resolution for eminent domain, just as one would expect in any eminent domain proceeding.

## LAW AND ARGUMENT

### A. Plaintiffs Fail to Demonstrate the Prior Matter's Settlement Agreement is Applicable to Successive Boards' Decisions.

Plaintiffs argue the Agreement forever binds the County from pursuing eminent domain for a road and bridge project on their property. Plaintiffs' arguments are without merit and must be dismissed. The somewhat routine agreement, memorializing the County's independent decision to cease its eminent domain activities at that time, does not and cannot bind successive boards.

It is still established and valid North Dakota law that governmental bodies may act under one of two capacities: (1) in a governmental or public character; or (2) in a business or proprietary

capacity. State ex rel. Dreyer v. Brekke, 75 N.D. 468, 476, 28 N.W.2d 598, 602 (1947) (quoting Chrysler Light & Power Co. v. City of Belfield, 58 N.D. 33, 46, 47, 224 N.W. 871, 877). Plaintiffs incorrectly cite Kitto as rejecting these notions. See Doc. No. 39, p. 10; see Kitto v. Minot Park Dist., 224 N.W.2d 795 (N.D. 1974). Converse to Plaintiffs' argument, Kitto is wholly irrelevant to the facts in this case.

In Kitto, the Court was faced with determining whether the legal doctrine of governmental immunity from tort liability to individual citizens should be sustained in North Dakota. Kitto, 224 N.W.2d at 797. It was under this question that the Court held there is no distinction between governmental and proprietary functions *as it relates to government immunity from tort lawsuits*. Id. Plaintiffs quote Kitto craftly in such a way to lead this Court to believe the holding is relevant to the dichotomy between governmental and proprietary functions as relevant in this lawsuit. However, their attempt to mislead is unavailing.

Plaintiffs further confuse the issues by attempting to argue Billings County exercised executive powers in entering the Agreement, and therefore, the contract validly restricted the power of eminent domain. Plaintiffs' position, however, ultimately bolsters Billings County's argument that when it entered the Agreement it was exercising its authority in a governmental capacity, which cannot bind future boards. Brekke, 75 N.D. at 476. There is no distinction under relevant law that differentiates legislative from executive powers under this analysis, and Plaintiffs themselves state that "'governmental or legislative' actions consist of the…executive… authority." Doc. No. 39, p. 9; see id. As such, Plaintiffs do not prevail on an argument that the County's independent decision to no longer pursue eminent domain (prior to any settlement agreement with Plaintiffs) is somehow to be interpreted as forever precluding the County from later deciding to pursue a bridge in this location again in the future.

3

Additionally, Plaintiffs' "slippery-slope" argument is unsubstantiated in law or fact. Plaintiffs argue that because the County has the power to enter contracts and the Board has a "range of delegated taxing and spending powers…that are legislative in nature," the County may allege actions taken by the Board are legislative that are not. See Doc. No. 39, p. 12. Plaintiffs provide no support for the allegation that the County could somehow loop all actions taken in any capacity into a legislative, or other governmental function and nullify any agreements made that no longer serve the Board's interests. The alleged demise of North Dakota counties' contracting ability is unfounded.

### B. Plaintiffs Cannot Establish the Agreement Did Not Surrender Billings County's Eminent Domain Power.

Plaintiffs attempt to distinguish that the County did not relinquish its power to pursue eminent domain to condemn Plaintiffs' property for any purpose outside of the LMRC, and thus the Agreement is valid. Doc. No 39, p. 13. However, Plaintiffs fail to cite to a single case that supports their position.

Plaintiffs point solely to a Second Circuit case as support for a distinction in the validity of a contract foregoing eminent domain powers based on whether the power is foregone as to all or only a portion of the contracting party's property. See U.S. ex rel Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester County, 712 F.3d 761, 773 (2d Cir. 2013). In Westchester County, the County argued that an interpretation of a consent decree that would require passage of specific legislation strips the County Executive of "an essential attribute of its sovereignty." Id. The argued police power of the County Executive was the singular exercise (or not) of a veto. Id.

The Court agreed with the County that under the "reserved powers" doctrine, a county may not enter into binding contracts prohibiting the exercise of an essential attribute of its sovereignty in the future, including police powers and the power of eminent domain. Id. The Court elaborated

4

that the municipal veto, however, is not an essential part of the police powers of the County. Id. at 774 (internal quotation omitted). Therefore, the consent decree did not prevent any exercise of the County's police power, and thus, the County did not contract away the right to exercise an essential attribute of its sovereignty. Westchester Cnty., N.Y., 712 F.3d at 774. The ruling in that case is specific to actions that do not fall within an essential attribute of sovereignty. As the Westchester County Court noted, eminent domain power *is* such an attribute, and Plaintiffs' limited citation is misleading.

Furthermore, Plaintiffs' repeated allegation that the cases cited in Billings County's brief are antiquated and no longer applicable is inaccurate. As recent as 2018 the U.S. District Court of Arizona held that under West River Bridge Co. v. Dix, 47 U.S. 507 (1848) and its progeny, "the Contracts Clause cannot be used to enforce a contract that prevents a state actor from exercising its eminent domain power." Kingman Airport Auth. v. City of Kingman, No. CV-17-08260-PCT-JJT, 2018 WL 418011, *3 (D. Ariz. Jan. 16, 2018). See also United States v. 1.647 Acres (0.826 +/- Acres-E St. Corridor & 0.821+/- Acres-F St. Corridor) of Land, More or Less, Located in San Diego Cnty., California, No. 3:15-CV-01859-L-DHB, 2017 WL 1080665, at *6 (S.D. Cal. Mar. 22, 2017) (rejecting the argument that a settlement agreement in a previous eminent domain dispute over the same property barred the government from later condemning the same).

Similarly, the Superior Court of New Jersey held a state agency was permitted to use eminent domain to condemn a landfill, despite a contract prohibiting the same, as it is an essential attribute of state sovereignty that cannot be contracted away. New Jersey Sports & Exposition Auth. v. Town of Kearny, No. A-5152-15T1, 2017 WL 5564103 (N.J. Super. Ct. App. Div. Nov. 20, 2017). Finally, as explained by the Supreme Court of Oklahoma, who follows the majority of jurisdictional consensus on this issue, "the right of eminent domain is inalienable, *cannot be*

5

*surrendered in whole or in part* and cannot be contracted away." Nat. Gas Pipeline Co. of Am. LLC v. Foster OK Res. LP, 465 P.3d 1206, 1210 (Okla. 2020) (emphasis added). There is no support for disregarding binding precedent simply because of the time period it originated.

      **C.**      **Plaintiffs Fail to Establish a Promissory Estoppel Claim.**

Plaintiffs have failed to establish a promissory estoppel claim under the true facts of this case. While "'specific facts' are not required, bare assertions or 'formulaic recitations' of the elements [of promissory estoppel] are not enough to state a claim." Roe v. Nebraska, 861 F.3d 785, 787 (8th Cir. 2017) (internal citations omitted).

In July of 2021, the Board made the decision to rescind all previous authorizations for condemning Plaintiffs' property for the LMRC and ceased all condemnation efforts related thereto. Doc. No. 1-8. This decision was made *prior* to any negotiations with Plaintiffs related to the Agreement. Plaintiffs, therefore, did not negotiate or bargain for the County's determination to cease pursuing eminent domain to acquire property rights for the LMRC on Plaintiffs' property. This was a decision made independently by Billings County during its Regular Meeting on July 6, 2021 without the input of Plaintiffs. Doc. No. 1-4.  The later negotiated Settlement Agreement merely memorialized the decision of Plaintiffs to dismiss the lawsuit given Billings County's July decision not to pursue eminent domain.

Plaintiffs cannot now plausibly argue that they relied on Billings County's declaration in the Agreement that it would cease pursuing eminent domain on Plaintiffs' property when the County had previously made a motion to do the same without any bargained-for consideration from Plaintiffs during the settlement negotiations. The Commission voted not to pursue the Project absent any promises by Plaintiffs. Plaintiffs did not make a substantial change in their legal position in reliance of the Board's negotiations since the Board already determined it would not move forward with condemnation proceedings for the LMRC. Furthermore, pursuant to the Order

adopted by this Court on July 22, 2021, which accepted the parties' settlement agreement, the claims that Plaintiffs dismissed pursuant to the Agreement were dismissed *without* prejudice. Doc. No. 30, Short et al. v. Billings County et al., 1:20-CV-00079-DMT-CRH (D.N.D July 22, 2021). Plaintiffs did not surrender any rights, nor substantially change position in reliance upon Billings County's statement as they are still entitled to bring any claims they dismissed. As Plaintiffs cannot establish the requisite elements of a claim for promissory estoppel, the same should be dismissed.

### D.  Plaintiffs' Fail to Demonstrate Billings County's Actions Do Not Establish Public Use or Necessity.

Plaintiffs fail to provide evidence that the LMRC does not satisfy the public use and necessity requirements. Plaintiffs argue the primary motivation for the LMRC is to benefit local oil interests and allege there is no evidence that the public will benefit from the bridge. Doc. No. 39, p. 21. Plaintiffs may *believe* the motivation for the LMRC is to benefit local oil interests, however, the lack of any evidence to support Plaintiffs' allegation renders the same wholly inaccurate. The Condemnation Resolution ("Resolution") makes clear the primary intended public benefit of the LMRC is to provide "users a safe, efficient, and reliable local connection between roadways on the east and west sides of the Little Missouri River." Doc. No. 1-1. The LMRC will "[allow] for enhanced fire management, emergency response services, county road maintenance, school bus routes, tourism, and generally ease travel in the area." Id.

Additionally, Plaintiffs argue that Billings County asserts a public use may be satisfied if the project supports economic development. Doc. No. 39, p. 22. Nowhere in Billings County's brief is such assertion made. Although one benefit of the LMRC is to improve the transport of goods and services, there is substantial evidence demonstrating the fire management and emergency response services will be directly benefitted. Doc. No. 39-1. Testimony at Commission meetings of the relevant fire departments, emergency services, and law enforcement established

they "need the bridge as a passage to the other side of the river for emergency purposes." Doc. No. 1-3. "The fire trucks and water tenders cannot pass through the crossings that are there right now." Id. Further testimony provided that the LMRC "would benefit emergency management, fire fighters, and allow for surface material from across the river to district 2." Doc. No. 1-10. Plaintiffs' argument is a well-worn, out of date assertion that a former County Commissioner, Jim Arthaud, pursued the bridge while having a conflict of interest. Mr. Arthaud has not been a County Commissioner since January 2021 and the County Commission, without Arthaud, independently initiated eminent domain action over two years later, rendering Plaintiffs' unsubstantiated claims of impropriety irrelevant.

What's more, the Environmental Impact Statement (EIS) prepared by the Federal Highway Administration (FHWA), North Dakota Department of Transportation (NDDOT), and Billings County, provides the "purpose of the project is to provide for the safe and efficient movement of people and commerce." Questionably, Plaintiffs try to allude that greater access to emergency services is a question of fact. Doc. No. 39, p. 21. This is a ridiculous position as the EIS cites multiple studies conducted, identifying that fire rescue and emergency medical respondents would be able to access emergencies at a faster rate with the LMRC. As clearly demonstrated by the hearings and reasons underlying the project, the public will be substantially and directly benefited by the LMRC. Plaintiffs' meritless and absurd spinning of facts underscore the lengths Plaintiffs will go to distort the record in an attempt to mislead this Court and demonstrate the questionable veracity of their legal and factual assertions.

Plaintiffs additionally misconstrue Billings County's argument as to Eberts. Although Plaintiffs are correct that Eberts involved the use of Chapter 24-05, N.D.C.C., the case still provides support that when a county utilizes its quick take authority for a public road, under

8

Chapter 24-05 *or* 11-10, public use may be conclusively established if the county satisfies the statute's requirements. Eberts, 2005 ND 85, ¶¶ 16-17, 695 N.W.2d 691, 697.

### E.  Plaintiffs Have Failed to Establish Billings County Acted in Bad Faith

Plaintiffs cannot substantiate their claim that Billings County acted in bad faith. In their brief, Plaintiffs assert eight allegations that they state demonstrate Billings County acted in bad faith, all of which lack evidentiary support. First, throughout Billings County's briefing it has thoroughly established the public benefits that will directly be served by the LMRC, and rebutted Plaintiffs' arguments that the only benefit is for local oil interests. Second, as this present condemnation is separate and distinct from any actions taken or foregone in 2021, Plaintiffs try to mislead this Court by referencing actions taken by a previous board solely in the context of prior pre-condemnation proceedings. Arguments based on the actions outside the 2023 condemnation are irrelevant to Billings County's current finding of necessity, and do not bear weight in this analysis.

Third, Billings County has provided extensive legal support for the argument that the action of entering a contract in a governmental capacity cannot bind successive boards and that the County may not contract away or surrender its right to pursue eminent domain as an essential attribute of its sovereignty. Fourth, Plaintiffs argue it was bad faith for Billings County to draft the Resolution before the Plaintiffs formally declined the County's just compensation offer. Prior to the 2023 condemnation proceedings, Plaintiffs had rejected every offer the County had made to purchase their property. While there are no facts provided to show the Resolution was prepared prior to Plaintiffs unilaterally ending negotiations, it certainly would not be in bad faith to prepare for Plaintiffs' rejection of the offer when the pattern historically was rejection by the same.

Finally, Plaintiffs suggest the County pursuing eminent domain under N.D.C.C. Ch. 24-05 rather than 11-10 was in bad faith. Billings County is permitted to use the quick take proceedings

under either Chapter 11-10 or 24-05. The more general provision, 11-10, was used by the County in part because Plaintiffs made clear they had no interest in selling their property for the LMRC. The process under 24-05 is designed to allow landowners the chance to provide information to the Board regarding the value of their property. See N.D.C.C. § 24-05-11. As this Court is well aware, the LMRC has been ongoing for nearly twenty years. The Plaintiffs have had every opportunity to present their arguments, thoughts, and opinions to the Commission during that time, and have done so. Their expressions indicated their opposition to negotiation, and therefore the Board did not feel the labor-intensive, expensive process under 24-05 was warranted. Plaintiffs admit that Billings County has the right to use either proceeding, Plaintiffs cannot now argue they were deprived of due process rights simply because they would have preferred the County use the more time intensive Chapter 24-05.

## CONCLUSION

Based upon the foregoing and its previous briefing, Defendants respectfully request this Court dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated this 20th day of November, 2023

**VOGEL LAW FIRM**

BY: */s/ Tami L. Norgard*
Tami L. Norgard (#05374)
Bennett L. Johnson (#08922)
Kylie J. Sollie (#09426)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
Telephone:  701.237.6983
Email:    tnorgard@vogellaw.com
          bjohnson@vogellaw.com
          ksollie@vogellaw.com
ATTORNEYS FOR DEFENDANTS