**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Sandra Short; David Short; Donald Short; and Sarah Sarbacker, | |
| Plaintiffs, | |
| vs. | Civil No.: 1:23-cv-00143 |
| Billings County, a political subdivision of the State of North Dakota; Lester Iverson, Billings County Commissioner, in his official capacity; Steven Klym, Billings County Commissioner, in his official capacity; Dean Rodne, Billings County Commissioner, in his official capacity, | |
| Defendants. | |

**ORDER GRANTING, IN PART, AND DENYING, IN PART,
MOTION FOR PRELIMINARY INJUNCTION AND
DENYING WITHOUT PREJUDICE MOTION TO DISMISS**

**INTRODUCTION AND SUMMARY OF DECISION**

[¶1]    THIS MATTER comes before the Court on two Motions. First, Plaintiffs Sandra Short, David Short, Donald Short, and Sarah Sarbacker (collectively, "the Shorts") filed a Motion for Preliminary Injunction on August 18, 2023. Doc. No. 11. Defendants Billings County ("the County"), Lester Iverson, Steven Klym, and Dean Rodne (collectively, "County Defendants") filed a Response on September 18, 2023. Doc. No. 29. The Shorts filed a Reply on September 25, 2023. Doc. No. 30. Second, the County Defendants filed a Motion to Dismiss the Shorts' Complaint on October 9, 2023. Doc. No. 33. The Shorts filed a Response on November 6, 2023. Doc. No. 39. The County Defendants filed a Reply on November 20, 2023. Doc. No. 40. A hearing on both

- 1 -

Motions was held on January 22, 2024. See Doc. No. 42. The Parties filed post-hearing briefs on February 5, 2024. Doc. Nos. 44, 45. The Parties filed responsive briefs on February 20, 2024. Doc. Nos. 46, 47. Reply briefs were filed on February 27, 2024. Doc. Nos. 48, 49. The Shorts filed a Sur-Reply on March 1, 2024. See Doc. No. 52.

[¶2]     The crux of this case is the preservation of the untouched and dramatic beauty of the Shorts' property in the North Dakota Bad Lands while the underlying legal issues are resolved. Theodore Roosevelt once described this area in compelling terms:

> From the edges of the valley the land rises abruptly in steep high buttes, whose crests are sharp and jagged. This broken country extends back from the river for many miles, and has been called always, by Indians, French voyageurs, and American trappers alike, the "Bad Lands," partly from its dreary and forbidding aspect and partly from the difficulty experiences in traveling through it.

Theodore Roosevelt: An American Mind: A Selection from His Writings, 279, Mario R. DiNunzio, ed. (1994). Billings County plans to build a bridge to traverse this difficult terrain. It has used a "quick take" procedure to take possession of the property. As a result, it is undisputed the County is in possession of the Shorts' property at the heart of this case. It is also undisputed the Shorts have filed an administrative appeal. But that administrative appeal does not stay the County's use or possession of the Shorts property while the complicated issues presented in this case and the State Court action are resolved. This Court, however, will do what the State Court is not permitted to do by law and stay the County Defendants' use and possession of the Shorts' property while the condemnation appeal plays out in State Court.

[¶3]     Weighing each of the Dataphase factors, considering especially the threat of irreparable harm that could befall this beautiful land without an injunction, this Court concludes the County and its agents should be prohibited from entering the Shorts property during the pendency of this case and the related State Court proceeding. This will preserve the quality of the Shorts land while

the legal issues are resolved. However, given the parallel nature of this case with the State Court proceeding and the substantially similar claims at issue in both cases, the Court believes a stay of this proceeding is warranted to allow the State Court to do its work in the administrative appeal.

[¶4]    Accordingly, the Motion for Preliminary Injunction is **GRANTED, in part, and DENIED, in part** and the Motion to Dismiss is **DENIED without prejudice**.

## BACKGROUND

[¶5]    This case involves the construction of a bridge over the Little Missouri River—known as the Little Missouri River Crossing or LMRC—and the County's exercise of eminent domain of the Shorts' land to construction the LMRC. See Doc. No. 1, ¶¶ 51-52. The Court provides the essential facts necessary to decide the issues presently before it.

[¶6]    The County first began contemplating the LMRC in 2006. Id. at ¶ 52. At that time, however, the County proposed a different site, but ultimately abandoned that location because of its close proximity to former president Theodore Roosevelt's homestead, the Elkhorn Ranch. Id. When the original work began, former County Commissioner James Arthaud estimated the bridge would have 1,000 oil trucks per day using the LMRC. Id. at ¶ 51.

[¶7]    Eventually, the County began condemnation proceedings for the Short's property on March 27, 2020. Id. at ¶ 63. Prior to the official start of the condemnation action, however, the Shorts preemptively sued the County and its then-commissioners. Id. at ¶ 84. In the original Short v. Billings County et al., Case No. 1:20-cv-79 (D.N.D.) ("Original Case"), the parties litigated whether the County violated the Shorts' constitutional rights and it sought declaration the taking was neither necessary nor for public purpose under federal or North Dakota law. Id.

- 3 -

[¶8]    After much litigation, the Original Case settled. Id. at ¶ 94. In July 2021, the parties to the

Original Case signed a Settlement Agreement. Doc. No. 1-8. Relevant here, the Settlement

Agreement provided:

> NOW, THEREFORE, THE PARTIES STIPULATE that, the County having agreed
> it will not pursue eminent domain to condemn any of the Short property for a Little
> Missouri River Crossing **or pursue any legal action against the Shorts to
> condemn their property** and having made the motion stated, the law suits
> referenced above will be dismissed, and the Shorts will not pursue the above
> referenced lawsuits whether in the original forum or through any appeals, and
> within fourteen (14) days of execution of this agreement, the Shorts will dismiss
> any lawsuits referenced above that remain pending with prejudice, and without fees,
> costs, or expenses awarded by the court to either party and with each party agreeing
> to bear its own fees, costs, and expenses.

Doc. No. 1-8, p. 2 (emphasis added).

[¶9]    On November 8, 2022, former County Chairman Mike Kasian lost his election to

Defendant Steven Klym ("Commissioner Klym"). Doc. No. 1, ¶ 106. At a February 7, 2023,

County meeting, and despite the previous Settlement Agreement, the Board voted to proceed with

the LMRC on the Shorts' property. Id. at ¶ 107. On June 23, 2023, the County offered the Shorts

$20,000 per acre for 29.86 acres and $500 per acre per year for 12.10 acres as a temporary easement

for construction. Id. at ¶ 113. Under the proposal, the Count would have five (5) years to finalize

the conditions precedent to beginning constructing the LMRC. Id.

[¶10]   After the Shorts rejected the County's offer, the County began "quick take" proceedings

under N.D.C.C. ch. 24-05 and § 11-10-26. At the hearing, it was agreed the County is now in

possession of the Shorts' property under this chapter of the North Dakota Century Code. In

anticipation of the quick take, on August 2, 2023, the Shorts filed a Complaint in this Court alleging

(1) Breach of Contract; (2) Promissory Estoppel; (3) Declaratory Judgment—No Public Use under

the Fifth Amendment of the United States Constitution; (4) Declaratory Judgment—No Public Use

under Article 1, Section 16 of the North Dakota Constitution and N.D.C.C. § 32-15-05(1); and (5) Declaratory Judgment—Lack of Necessity under N.D.C.C. § 32-15-05. Doc. No. 1.

[¶11]   The Shorts also appealed the County Defendants' decision to use the quick take condemnation proceedings in State Court on August 7, 2023. See Short et al. v. Billings County Board of County Commissioners, Case No. 04-2023-CV-00010, Billings County, North Dakota, Index Nos. 1-9. In their appeal, the Shorts claim the Board's factual findings and conclusions that the condemnation was necessary for public use is erroneous and the condemnation violated their constitutional rights. The Shorts request in their appeal (1) a jury trial of 9; (2) reconveyance of all land condemned by Appellee; (3) award statutory damages for damage to the Shorts' land; (4) attorneys' fees; (5) assess costs; and (6) any other relief which the Shorts are entitled including just compensation. Id. at Index No. 9.

## JURISDICTION

[¶12]   The Parties dispute the Court's jurisdiction over the claims in this case. The Defendants argue the amount in controversy is less than $75,000 and there is no diversity of citizenship. Plaintiffs argue they are citizens of states other than North Dakota and the amount in controversy exceeds the threshold amount.

[¶13]   It is well-established "[f]ederal courts are courts of limited jurisdiction and the threshold requirement in every federal case is jurisdiction." Barclary Square Properties v. Midwest Federal Sav. And Loan Ass'n of Minneapolis, 893 F.2d 968, 969 (8th Cir. 1990). District courts have original jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).

[¶14]   For purposes of citizenship, pleading residency is insufficient because people can have multiple residencies, but only one state of citizenship. See Hargett v. RevClaims, LLC, 854 F.3d

962, 965 (8th Cir. 2017) (noting "citizen" means something different than "resident" under 28 U.S.C. § 1332 because "citizenship requires permanence" while "[r]esidency is a more fluid concept" and "does not require an intent to make a place a home," whereas citizenship does). When a plaintiff brings a claim for injunctive relief, the Court looks to "the value of the right sought to be gained by the Plaintiff." Hedberg v. State Farm Mut. Auto Ins. Co., 350 F.2d 924 (8th Cir. 1965). If a plaintiff has made a good faith claim as to the amount, that claim controls unless the defendant can show to a "legal certainty" that the claim is less than $75,000. Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009).

[¶15]   For purposes of ruling on the present Motions, the Court concludes the record sufficiently alleges the citizenship of each party and complete diversity exists. While the Complaint merely alleges each Plaintiff "resides" in a state other than North Dakota, Counsel has averred in briefing as an officer of the Court each Plaintiff has no intention to have North Dakota as their permanent home. Doc. No. 47, pp. 9. Having stated that, the Court recognizes the Complaint's deficiency and believes a supplement of the record is appropriate. Counsel for Plaintiffs shall file a jurisdictional supplement to provide a factual basis to establish each Plaintiffs' state of citizenship.

[¶16]   The Court also concludes the amount in controversy element is also satisfied at this time. The Complaint alleges in good faith the County offered the Shorts $20,000 per acre for approximately 29 acres of property. This amount greatly exceeds the required $75,000. The Defendants have not proven to a "legal certainty" that the amount in controversy is less than $75,000. See Bell 557 F.3d at 956.

[¶17]   Accordingly, the Court has diversity jurisdiction over the state law claims at issue here.

## PRELIMINARY INJUNCTION

### I.      Introduction and Legal Standard

[¶18]   Plaintiffs have moved for a preliminary injunction to prevent the Defendants from entering

their land that was recently taken by Billings County for the LMRC. Plaintiffs also seek a stay of

the condemnation proceedings that have begun in State Court. The Defendants oppose this request.

For the reasons set forth below, the Court will issue a preliminary injunction to prevent Billings

County or any of its agents from entering the Shorts' property during the pendency of this action

but will not stay the condemnation proceedings in the state district court.

[¶19]   In deciding whether to issue a preliminary injunction, the Court considers four distinct

factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm

and the injury that granting the injunction will inflict on other parties litigant; (3) the probability

that movant will succeed on the merits; and (4) the public interest." Dataphase Systems, Inc. v. C

L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Central to this analysis "is whether

the balance of equities so favors the movant that justice requires the court to intervene to preserve

the status quo until the merits are determined." Id. To that end, "no single factor is determinative,"

but the probability of success on the merits "is the most significant" factor. Id.; Home Instead, Inc.

v. Florance, 721 F.3d 494, 497 (8th Cir. 2013). Nevertheless, the Court is required to consider all

four of the Dataphase factors. See Home Instead, Inc., 721 F.3d at 500.

### II.      Threat of Irreparable Harm

[¶20]   The Shorts argue they will suffer irreparable harm because they will lose control over the

land at issue and the condemned land may be forever changed. If the LMRC plan moves forward,

the Shorts contend their land will be bisected and there will be no way to return it to its current

natural state in the future. The County Defendants argue the Shorts have failed to meet their burden

because they have failed to show the alleged harm is imminent because the design phase is supposed to start this year. Despite this, the County Defendants also intend to use the easements they have acquired for preconstruction purposes.

[¶21]   The purpose of injunctive relief is to provide a remedy for an irreparable harm that has inadequate legal remedies. Celco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." Watkins Inc., 346 F.2d at 844. In other words, "[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "[P]otential loss of consumer goodwill qualifies as irreparable harm." Iowa Utilities Bd. V. F.C.C., 109 F.3d 418, 426 (8th Cir. 1996). Courts can presume irreparable harm if the movant has established a probability of success on the merits of their claim. See Calvin Klein, 815 F.2d at 505 ("The court correctly noted that it could presume irreparable injury from a finding of probable success in proving likelihood of confusion." (citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980))); see also Kodiak Oil & Gas Inc. v. Burr, 303 F.Supp.3d 964, 984 (D.N.D. 2018) ("The Eighth Circuit Court of Appeals has explained that a district court can presume irreparable harm if the movant has a likelihood of success on the merits.").

[¶22]   Writing in 1885, before his election to the presidency, Theodore Roosevelt described the beauty of western North Dakota:

> The Northern cattle plains occupy the basin of the Upper Missouri; that is, they occupy all of the land drained by the tributaries of that river, and by the river itself, before it takes its long trend to the southeast. They stretch from the rich wheat-farms of central Dakota to the Rocky Mountains, and southward to the Black Hills and the Bighorn chain, thus including all of Montana, Northern Wyoming, and extreme Western Dakota. The character of this rolling, broken, plains country is everywhere much the same. It is a high, nearly treeless region, of light rainfall, crossed by streams which are sometimes rapid torrents and sometimes merely

strings of shallow pools. In places, it stretches out into deserts of alkali and sagebrush or into nearly level prairies of short grass, extending many miles without break; elsewhere there are rolling hills, sometimes of considerable height; and in other places the ground is rent and broken into the most fantastic shapes, partly by volcanic action and partly by the action of water in a dry climate. These latter portions form the famous Bad Lands. Cottonwood trees fringe the streams or stand in groves on the alluvial bottoms of the rivers; and in some of the steep hills and canyon sides are clad with pines or stunted cedars. In the early spring, when the young blades first sprout, the land looks green and bright; but during the rest of the year there is no such appearance of freshness, for the short bunch-grass is almost brown, and the gray-green sagebush, bitter and withered-looking, abounds everywhere, and gives a peculiarly barren aspect to the landscape.

Theodore Roosevelt: An American Mind: A Selection from His Writings, 276-277, Mario R. DiNunzio, ed. (1994). Despite the recent oil and gas development, this beauty largely survives in much of Western North Dakota. The County's attempt to take the Shorts' property will irreparably harm this beauty, forever changing the largely untouched landscape of the Shorts' property.

[¶23]   The threat of irreparable harm to the Shorts weighs in favor of issuing a preliminary injunction. Driving this conclusion is the Court's view of the evidence from the hearing. At the hearing, it became evident that absent an injunction, the Shorts' land will be irreparably changed. At the hearing, it was undisputed the County currently possesses the Shorts land because they used North Dakota's quick take eminent domain process. See generally N.D.C.C. ch. 24-05. North Dakota law, however, does not provide a remedy to the Shorts relating the County's use of their land during the Shorts' appeal. Despite the filing of the appeal, in North Dakota the County can "proceed with the use of the property so condemned." N.D.C.C. § 24-05-15.

[¶24]   Permitting the County to proceed with preparing and constructing the LMRC could irreparably change the entire landscape of the property at issue. It was undisputed at the hearing the County intends to demolish a knob (or small butte) on the Shorts' property to make way for the LMRC. Permitting the County Defendants to use the Shorts' property without limitation by a court significantly risks an irreversible change in the beautiful landscape of the Shorts' property.

The property has been in their family for generations and they have jealously and prudently preserved its natural condition. In addition, as discussed below, the Shorts are also likely to succeed on their breach of contract claim, so the threat of irreparable harm may also be presumed at this time. See Calvin Klein, 815 F.2d at 505 ("The court correctly noted that it could presume irreparable injury from a finding of probable success in proving likelihood of confusion."). Accordingly, this factor weighs in favor of granting a preliminary injunction to prevent the County Defendants and any of their agents from entering the Shorts property during the pendency of this case.

### III.   Balance of Harms

[¶25]   The Shorts argue the balance of harms tilts in their favor. The Shorts argue the County will not suffer any harm from further delay of the LMRC because the project has been under consideration for almost two decades. The Shorts contend additional delay will not cause the County any harm. The County Defendants argue the balance of harms tilts in their favor because enjoining them from entering the Shorts land to engage in preconstruction activities will cause economic and delay costs for not being able to finalize the County Defendants' plans regarding the LMRC.

[¶26]   "Once the court has determined that there is a threat of irreparable harm to the moving party, it must balance this harm with any injury an injunction would inflict on other interested parties." Richland/Wilkin Joint Powers Authority v. United States Army Corps of Engineers, 826 F.3d 1030, 1039 (8th Cir. 2016). As discussed above, the harm to the Shorts is significant. Denying this preliminary injunction would result in the Shorts' property potentially being upended and irreparably changed. Based on this preliminary record, the Defendants will suffer no harm other

than a delay in building the LMRC. Given this discrepancy, the Court concludes the balance of harms weighs in favor of issuing a preliminary injunction.

### IV.     Probability of Success on the Merits

[¶27]   The Court only considers the breach of contract claim under this prong. The County Defendants ask the Court to find a lack of probability of success on the merits largely for two reasons. First, the County Defendants attempt to distinguish between "legislative" and "governmental" powers versus the "proprietary" and "business" powers of the County. Because the Settlement Agreement was a "legislative" or "governmental" act, the Settlement Agreement cannot be binding on a future board of county commissioners. The Plaintiffs contend there is no statutory or North Dakota precedent to support this contention and the Complaint shows a clear cause of action for breach of contract. Second, the County Defendants argue they cannot contract away their sovereign rights to eminent domain. The Shorts argue the Settlement Agreement did not contract away their rights to eminent domain wholesale. Rather, it is an exceptionally narrow agreement not to pursue eminent domain specifically for the current LMRC project.

[¶28]   When determining the probable success on the merits of the claims, the Court should not "apply the probability language with mathematical precision." Calvin Klein, 815 F.2d at 503. The Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. (internal quotation marks and citation omitted).

[¶29]   The Eighth Circuit has described the probability of success on the merits "as the most important of the four [Dataphase] factors." Jet Midwest International Co. v. Jet Midwest Group, LLC, 953 F.3d 1041, 1044 (8th Cir. 2020) (alteration in original) (quoting Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011)). In weighing this factor, the Court does

not decide whether the movant "will ultimately win"; rather, the movant "must simply show a 'fair chance of prevailing.'" Id. (quoting PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007) and Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Whether a movant has shown a fair chance of prevailing does not mean the movant must "prove greater than fifty per cent likelihood that [it] will prevail on the merits." Id. (quotation marks omitted) (quoting Dataphase Sys., 940 F.2d at 113). Under circumstances where the movant has no chance of succeeding, an injunction will not issue. Id. (quoting Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005)).

[¶30]    A movant does not need to show a likelihood of success on the merits of every claim; rather, a movant must establish a likelihood of success on the merits of a single claim. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F.Supp.2d 1073, 1080 (D.N.D. 2009) ("The Court finds at this preliminary stage of the litigation, and based on the limited information in the record, the Conservancy has established a sufficient likelihood of success on the merits of its trademark infringement claim. The Court finds it is unnecessary to undertake an extensive review of the Conservancy's additional claims."); Running Horse, LLC v. Rodenbough Trucking & Excavating, Inc., 2016 WL 8737867, *3 (D.N.D. February 26, 2016) ("A likelihood of success on the merits of even one claim can be sufficient to satisfy the 'likelihood of success' Dataphase factor.").

[¶31]    The Shorts have shown a likelihood of success on their breach of contract claim.[1] North Dakota requires three elements for a breach of contract claim: "(1) the existence of a contract; (2)

---

[1] The Court is aware the Parties have raised the issue of the type of governmental action the County engaged in when it signed the Settlement Agreement and the validity of its agreement to refrain from building the LMRC—that is, its agreement not to exercise eminent domain. At this stage in the litigation, the Court refrains from deciding those issues because (1) the factual record is relatively undeveloped to determine the nature and extent of the contract and (2) this issue will likely become a consideration for the State Court proceeding to decide. At this stage, the Court simply limits its analysis to the traditional breach of contract claim in order to preserve the status

breach of the contract; and (3) damages which flow from the breach." Bakke v. Magi-Touch Carpet One Floor & Home, Inc., 2018 ND 273, ¶ 13, 920 N.W.2d 726. "The nonperformance of a contractual duty when it is due is a breach of contract." Three Aces Properties LLC v. United Rentals (North America), Inc., 2020 ND 258, ¶ 10, 952 N.W.2d 64. Under North Dakota law, the language of a contract controls when such language is clear, explicit, and free from absurdity. N.D.C.C. § 9-07-02. Contracts are interpreted to give effect to the mutual intention of the parties. N.D.C.C. § 9-07-03. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable." ND.C.C. § 9-07-06. To aid in that determination, "[e]ach clause is to help interpret the others." Id.

[¶32]   The record establishes a probability of success on the merits of the Shorts' breach of contract claim. The Shorts entered into a settlement agreement with the then-Billings County Board of Commissioners. In that agreement, the Board expressly stated it would not pursue any legal action to condemn their property in connection with the LMRC project. Subsequent to a new board member getting elected, the new Board voted essentially to unilaterally rescind that prior agreement and proceeded with the quick-take proceedings under N.D.C.C. ch. 24-05. This is contrary to the plain language of the Settlement Agreement. It is undisputed the County holds title to the condemned property pursuant to following the provisions of N.D.C.C. ch. 15-04. These facts establish a prima facie case for breach of contract. See Bakke 2018 ND 273 at ¶ 13 (stating the elements of breach of contract).

---

quo pending the outcome of the litigation of the issues. See Dataphase 640 F.2d at 113 (8th Cir. 1981) (noting, central to the preliminary injunction analysis "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.").

[¶33]  Accordingly, the probability of success on the merits of favors granting a preliminary injunction to the Shorts.

### V.    Public Interest

[¶34]   The Shorts argue the public's interest weighs in favor of an injunction because absent an injunction, the County Defendants will essentially be free to breach the Agreement. According to the Shorts, the public has a strong interest in holding public bodies accountable to their agreements. The County Defendants argue the public has a strong interest because ultimately the public bears the cost of the delay.

[¶35]   "For the court to grant an injunction, the moving party must establish that the entry of the relief would serve public interest." North Dakota v. E.P.A., 127 F.Supp.3d 1047, 1059 (D.N.D. 2015) (citing Dataphase, 640 F.2d at 113). In PCTV Gold, Inc. v. SpeedNet, LLC, the Eighth Circuit held the district court "did not abuse its discretion by concluding its grant of a preliminary injunction promoted the public interest by protecting freedom to contract through enforcement of contractual rights and obligations." 508 F.3d 1137, 1145 (8th Cir. 2007).

[¶36]   The Court has reviewed the record and concludes at this preliminary stage that the public's interest in protecting the freedom to contract through enforcement of contractual rights and obligations outweighs the interest of expeditious conclusion of the LMRC saga. See id. In addition, the land at issue in this case is the pristine Bad Lands of western North Dakota situated near Theodore Roosevelt National Park and Roosevelt's Elkhorn Ranch. As it came out at the hearing, the risk at issue in this case is to destroy the striking beauty and landscape of the Shorts property forever altering this unspoiled land. In this, the public has a strong interest in protecting the Short's property pending the outcome of this litigation. See WBI Energy Transmission, Inc. v. Easement & Right-of-Way Across, Case No. 1:18-cv-078, Doc. No. 131, p. 12 (D.N.D. Nov. 1, 2022) (noting

- 14 -

"it is in the blood of North Dakota landowners to be protective of their real estate."). Taking property by eminent domain is an odious, but necessary process. It is not a power that should be exercised by the whim of an election without review by a court. The public interest in enjoining the County, therefore, weighs heavily in favor of granting a preliminary injunction.

## VI.    Conclusion as to the Preliminary Injunction

[¶37]    The Eighth Circuit in Dataphase explained the central aspect to the preliminary injunction analysis "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase 640 F.2d at 113. The Court's holding here is driven by this component. It is vitally important to preserve the status quo to prevent the County and its agents from entering the Shorts' land while the remaining issues are litigated. However, as discussed below, the consideration of the remaining issues will be deferred pending the outcome of the parallel State Court proceedings.

## ABSTENTION

[¶38]    Under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), federal courts may abstain from exercising contemporaneous concurrent jurisdiction with a State Court proceeding. United States v. Rice, 605 F.3d 473, 476 (8th Cir. 2010) (quoting Colorado River, 424 U.S. at 817). "[A] federal court should only abstain from a case in which there are parallel state proceedings for 'exceptional circumstances.'" Royal Idem. Co. v. Apex Oil Co., 511 F.3d 788, 792 (8th Cir. 2008) (quoting Colorado River, 424 U.S. at 813). "The prevailing view is that state and federal proceedings are parallel for purposes of Colorado River abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court." Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 535 (8th Cir. 2009) (emphasis in original).

###### I.      Parallel Cases

[¶39]   In the Eighth Circuit, mere parallel cases are not enough for the Court to abstain from exercising jurisdiction. <u>Id.</u> In abstaining from exercising jurisdiction under <u>Colorado River</u>, "a substantial similarity must exist between the state and federal proceedings, **which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court**." <u>Id.</u> (emphasis added). However, "jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings" <u>Id.</u> A stay or dismissal of a federal action under <u>Colorado River</u> is improper if the State Court does not have jurisdiction to adjudicate the issues raised in federal court. <u>Cottrell v. Duke</u>, 737 F.3d 1238, 1246 (8th Cir. 2013) (quoting <u>Arizona v. San Carlos Apache Tribe of Arizona</u>, 463 U.S. 545, 559-60 (1983)). When federal courts have exclusive jurisdiction, abstention is an abuse of discretion. <u>Id.</u> at 1248.

[¶40]   Here, Plaintiffs have appealed the county's decision to exercise eminent domain and condemn their property for the LMRC project. This case is pending in State Court with a trial in September of this year. <u>See</u> <u>Short v. Billings County Board of County Commissioners</u>, Billings County, North Dakota, Case No. 04-2023-cv-00010. In the instant case, the Shorts ask the Court to enjoin any further proceedings relating to the state condemnation. In doing so, the Plaintiffs bring five causes of action against the Defendants. The first is a breach of contract because the Plaintiffs and a previous board of county commissioners entered into a settlement agreement in which the previous board agreed it would not reinstitute condemnation or eminent domain proceedings. According to the Shorts, the Defendants are in breach of their settlement agreement by exercising their quick take rights. Second, Plaintiffs claim promissory estoppel bars the condemnation proceedings because the Plaintiffs relied on the settlement agreement to their

detriment. Third, Plaintiffs seek a declaratory judgment that the condemnation is not for public use under the Fifth Amendment. Fourth, Plaintiffs seek a declaratory judgment the condemnation is not for public use under Article 1, Section 16 of the North Dakota Constitution and N.D.C.C. § 32-15-05(1). Fifth, Plaintiffs seek a declaratory judgment stating there is a lack of necessity under N.D.C.C. § 32-15-05.

[¶41]   There is a substantial likelihood all the issues here will be addressed by the pending State Court proceeding. As noted above, the claims for lack of necessity and lack of public use from the taking and that the taking was unconstitutional are expressly noted in the administrative appeal. The claims for breach of contract and promissory estoppel should also be asserted in the State Court action. The State Court appeal notes a request for any relief the court deems fair and just. This Court does not need to decide whether the Shorts can assert their breach of contract and promissory estoppel claims in the State Court proceeding. That decision is best left to the State Court to decide.

[¶42]   The County Defendants argue the state proceeding is governed by the North Dakota Rules of Civil Procedure, which require all claims arising out of the same "transaction or occurrence that is the subject matter of the opposing party's claim" to be asserted in the State Court action. See N.D.C.C. § 32-15-13; N.D.R. Civ. P. 13(a); Sec. Nat. Bank, Edgeley v. Wald, 536 N.W.2d 924, 928 (N.D. 1995). The standard for the same "transaction or occurrence" in North Dakota is whether the issues are "logically related" to one another. Wald, 536 N.W.2d at 928 (quoting Leo Lumber Co. v. Williams, 191 N.W.2d 573, 576 (N.D. 1971)). The breach of contract and promissory estoppel claims are logically related to the other issues raised in the State Court appeal. Indeed, they potentially provide additional reason the County may be unable to condemn the Shorts' property.

[¶43]   The Shorts argue reading Rule 81, N.D.R. Civ. P. and N.D.C.C. § 32-15-13 together shows the Rules of Civil Procedure only apply when the statutory proceeding's procedural rules are silent on an issue. According to the Shorts, the powers of the State Court are limited to those indicated in N.D.C.C. § 32-15-21.

[¶44]   Even assuming under North Dakota law only Section 32-15-21 governs the powers of the State Court to adjudicate issues in condemnation appeals, Section 32-15-21 gives the State Court authority to review the breach of contract and promissory estoppel claims. Section 32-15-21 provides in relevant part:

> 1.  The court shall have power:
>     a.  To regulate and determine the place and manner of making connections and crossings, or of enjoying the common use mentioned in subsection 6 of section 32-15-04.
>     b.  To hear and determine **all** adverse or conflicting claims to the property sought to be condemned and to the damages for the property.
>     c.  To determine the respective rights of different parties seeking condemnation of the same property.

N.D.C.C. § 32-15-21(1) (emphasis added).

[¶45]   Neither of the parties have provided any case interpreting the scope of the State Court's review under Section 32-15-21, N.D.C.C., of a condemnation proceeding. In North Dakota, courts look to the plain and ordinary meaning of undefined statutory terms. Continental Resources, Inc. v. Counce Energy BC #1, LLC, 2018 ND 10, ¶ 8, 905 N.W.2d 768. Section 32-15-21(b) of the North Dakota Century Code provides broad authority to the State Court to hear "**all** adverse or conflicting claims to the property" subject to condemnation. It appears to this Court the breach of contract and promissory estoppel claims[2] are adverse and conflicting claims to the property the

---

[2] The Shorts contend the State Court proceeding can only address the constitutionality of the County's decision to use quick take, not the constitutionality of the LMRC and its routing through the Shorts' property. This is a distinction without a difference. They are essentially the same issue as presented in this case. If the LMRC is unconstitutional, then the County's decision to exercise

County took using the quick take procedures. The claim is essentially there was a contract or promise for the County not to condemn the Shorts' property for the LMRC, therefore the property is still the Shorts. This is an adverse or conflicting claim to the property. The Shorts contend it is still their property under the circumstances pursuant to the Settlement Agreement or promise made by the County. The question in the State Court proceeding would be whether the Settlement Agreement or promise by the County precludes the County from condemning the property. Each of the issues relating to the formation, validity, and scope of the contract and promise appear to fall within the confines of N.D.C.C. § 32-15-21. Nevertheless, if the State Court disagrees, the Shorts may move to lift the stay and pursue these issues before this Court.

[¶46]   Accordingly, there is a substantial likelihood the State Court proceeding will resolve all of the issues present in this case.[3] See Fru-Con, 574 F.3d at (noting, "a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."). Therefore, the cases are parallel under Colorado River.

## II.   Extraordinary Circumstances

[¶47]   Once a court determines the federal and state proceedings are, in fact, parallel, the court then looks to six factors to determine whether exceptional circumstances exist to justify abstaining from exercising jurisdiction:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal

---

eminent domain over the property would be unconstitutional as well. The State Court can decide whether the taking of the short's property is for public use under the Fifth Amendment. Indeed, the Complaint specifically challenges the taking itself, that is, the County's decision to use the quick take procedure, stating, "[t]he Shorts contest **the taking** is for public use." Doc. No. 1, ¶ 145.

[3] There is no dispute the Parties to the State Court action are the same as in this case.

> litigation and the federal court issue is easily severed, (4) which case has priority—
> not necessarily which case was filed first but a greater emphasis on the relative
> progress made in the cases, (5) whether state or federal law controls, and (6) the
> adequacy of the state forum to protect the federal plaintiff's rights.

Federal Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc., 48 F.3d 294, 297 (8th Cir.

1995) (cleaned up). The Court considers these factors "in a pragmatic, flexible manner with a view

to the realities of the case at hand." Spectra Commc'ns Grp., LLC v. City of Cameron, Mo., 806

F.3d 1113, 1121 (8th Cir. 2015).  The Court will address each factor in turn.

### A.  The Res

[¶48]   The Shorts argue this factor weighs against abstention because this case was filed first. The

County Defendants contend this factor weighs in favor of abstention because the State Court has

jurisdiction over the property condemned by the County Defendants. The Court concludes this

factor is neutral. Both state and federal courts have jurisdiction over the land at issue, and the Court

has already determined diversity jurisdiction exists. There is also a Fifth Amendment claim. Each

issue can be addressed by either Court. Therefore, this factor is neutral.

### B.  Inconvenience of Federal Forum

[¶49]   The Shorts argue this Court is a more convenient forum because it will more fully resolve

the issues in a single action. In addition, each of the Shorts live outside of North Dakota and

traveling to Bismarck, North Dakota, is easier than traveling to Billings County. The County

Defendants argue the State Court is a more convenient forum because the County Defendants are

all in Billings County, the property is in Billings County, and every event giving rise to the case

are in Billings County.

[¶50]   The Court finds this factor weighs slightly in favor of abstention. While the Court

understands the ease of travel to Bismarck versus Billings County, the Court cannot ignore the fact

that each County Commissioner lives in Billings County, the property at issue is in Billings

County, and the events surrounding the condemnation action in this case occurred in Billings County. On balance, this factor weighs slightly in favor of abstention.

### C. Piecemeal Litigation

[¶51]   The Shorts argue abstaining from exercising jurisdiction increases the risk of piecemeal litigation because the claims are not parallel to the State Court proceeding. According to the Shorts, the State Court does not have jurisdiction to hear their breach of contract or promissory estoppel claim and is limited to the constitutionality, public use, and necessity arguments raised by Shorts. If the Court abstains, according to the Shorts, they may eventually be forced to file a separate State Court action asserting breach of contract and promissory estoppel.

[¶52]   The County Defendants argue the State Court proceeding is the most complete action for deciding the issues before this Court. The County Defendants contend the breach of contract and promissory estoppel claims are essentially defenses to the condemnation that should be asserted in the State Court proceeding rather than in this Court. According to the County Defendants, if this Court does not abstain or dismiss, different courts will decide the same issues.

[¶53]   This is the "predominant factor" the Court must consider. Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc., 48 F.3d 294, 297 (8th Cir. 1995). "The policies underlying Colorado River abstention are considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. (cleaned up). In the Eighth Circuit, courts favor "the most complete action." Id. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Bank of Okla., N.A. v. Tharaldson Motels II, Inc., 671 F.Supp.2d 1058, 1065 (D.N.D. 2009) (quoting Keating v. Univ. of S.D., 386 F.Supp.2d 1069, 1103 (D.S.D. 2005)).

- 21 -

[¶54]   As discussed above, there is a substantial likelihood each of the issues raised in this case will be decided in the State Court action. Permitting this case to proceed when there is a substantial likelihood the State Court proceeding will decide each issue addressed in this case is the definition of piecemeal litigation. See id. ("Piecemeal litigation occurs when different tribunals consider the same issue."). Indeed, the State Court action is the "most complete" venue for adjudicating the issues before this Court. Federated Rural Elec., 48 F.3d at 297. As discussed below, the case involves the application of state law, with only one limited federal constitutional claim the taking is not for public use. By and large this is a state law eminent domain action subject to the laws of North Dakota. The process begun in State Court is the most complete venue for resolving the issues. Accordingly, this factor weighs heavily in favor of abstention.

### D.  Case Priority

[¶55]   The Shorts argue this case has priority over the State Court action because it will more fully resolve the issues, it was filed first, and much further along than the state proceedings because the parties have submitted their positions and testimony was taken at the hearing. The County Defendants argue this factor weighs in favor of abstention because the state case is further ahead in its litigation.

[¶56]   Case priority is not determined by which case was filed first; rather, the court looks to "how much progress has been made in the two actions." Federated Rural Elec, 48 F.3d at 298. While this case precedes the State Court appeal, this federal case is still in its initial phase. While the Court has heard some limited testimony and the parties have submitted briefing on the preliminary injunction and motion to dismiss, discovery has not started, there is no trial date, and there are no further motions before the court. In other words, this federal case is still in its infancy. The parties

agree discovery has begun in the State Court proceeding[4] and a jury trial date is set for September of this year. The Court concludes the State Court case has priority because it is further along in its proceedings than this case. This factor weighs in favor of abstention.

### E.  State or Federal Law in Control

[¶57]   The Shorts concede North Dakota law governs a majority of the claims here, specifically, Counts I, II, IV, and V. Only Count III is governed by federal law. The County Defendants argue this case is predominantly governed by state law.

[¶58]   "[T]he presence of state law issues will weigh in favor of abstention only in rare circumstances." Federated Rural Elec., 48 F.3d at 299. When federal law controls most of the claims, this factor is a "major consideration" against abstention. Cedar Rapids Cellular Telephone, L.P. v. Miller, 280 F.3d 874, 879 (8th Cir. 2002). "However, when governed only by federal law, and 'the bulk of the litigation' revolves around state law, it is a factor the Supreme Court has expressly relied upon in approving a federal court's stay." Tharldson Motels, II, 671 F.Supp.2d at 1066 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, n.29 (1983)).

[¶59]   The application of federal law in this case is extremely limited. It only applies to Count III of the five counts in the Complaint. The remaining issues are controlled by state law. This factor weighs heavily in favor of abstention. See id.

---

[4] The Shorts contend that, while discovery has begun, no discovery has been served. This does not negate the fact that discovery in the state case is proceeding as usual. The Court is aware discovery may take time and effort prior to production. There is no dispute discovery has started in the State Court proceeding.

### F.  Adequacy of State Forum to Protect Federal Plaintiff's Rights

[¶60]   The Shorts contend the state proceeding cannot protect their rights because the State Court cannot hear all of its claims asserted here. The County Defendants argue the State Court can adjudicate each of the issues raised.

[¶61]   "[T]here is no presumption that a State Court is biased or otherwise inadequate to protect the federal plaintiff's rights." Tharaldson Motels, II, 671 F.Supp.2d at 1066 (quoting U.S. Fidelity and Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994)). As discussed above, each of the issues can be decided in the State Court proceeding. The State Court is adequate to protect the Shorts' rights. This factor weighs in favor of abstention.

### G.  Conclusion as to Abstention

[¶62]   Weigh each of the factors, the Court concludes this case and the State Court case are parallel and extraordinary circumstances justify abstaining from hearing this case at this time.[5] However, because there is a possibility the State Court may decline to hear each of the claims asserted by the Shorts, the Court concludes a stay of this proceeding is the appropriate remedy at this time. In the event the State Court prohibits the Shorts from asserting each of their claims in that case, they may file a motion to lift the stay and proceed with those claims here.

---

[5] Even if abstention under Colorado River were not appropriate in this case, the Court would stay this case pursuant to Aaron v. Target Corp., 357 F.3d 768, 774 (noting abstention is appropriate when three factors are met: "(1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests, and (3) which provides an adequate opportunity to raise constitutional challenges"). As discussed, there is an ongoing condemnation proceeding in State Court. "Eminent domain proceedings have long been recognized as an important state interest." Id. at 777 (citing Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28 (1959)). The State Court proceedings appear to be adequate for the Shorts to raise each claim at issue in this case, including their constitutional challenge. Accordingly, abstention under Aaron would be appropriate in this case.

**MOTION TO DISMISS**

[¶63]   The County Defendants have filed a Motion to Dismiss for Failure to State a Claim. The Court has concluded a stay of this proceeding pending the outcome of the parallel state case is appropriate under the circumstances. To afford the State Court the full opportunity to consider the issues presented, this Court declines to rule on the County Defendants' Motion to Dismiss at this time. The Motion to Dismiss is, therefore, **DENIED without prejudice**. In the event the stay is lifted and this case proceeds on any of the claims, the County Defendants may reassert the issues raised in their Motion to Dismiss at that time.

**CONCLUSION**

[¶64]   The Court has reviewed the entire record and Dataphase factors and finds the Shorts have met their burden of establishing the need of a preliminary injunction requiring the County Defendants or their agents to refrain from entering the property at issue during the pendency of this case and the underlying State Court appeal. In this respect, the Short's Motion for Preliminary Injunction is **GRANTED, in part**. The County Defendants and/or their agents are **ENJOINED** from entering onto the disputed property during the pendency of this case and the State Court proceeding. No security bond was requested, and none shall be ordered. See Fed. R. Civ. P. 65(c).

[¶65]   The Court declines to enjoin the State Court proceedings and, instead, orders this federal case is **STAYED** pending the outcome of the State Court proceeding. If at any time during the pendency of the state proceeding, the State Court prohibits the Shorts from asserting their claims filed here in the State Court case, the Shorts may move to lift this stay. The injunction shall remain in effect during the period in which this case is stayed and until final resolution of this matter. Because the Court stays this proceeding to permit the State Court case to proceed, the Motion for

Preliminary Injunction is **DENIED, in part**, insofar as the Shorts ask the Court to enjoin the State Court condemnation proceedings.

[¶66]   Because the Court stays this case and to give the State Court the ability to decide the issues raised in that court, the County Defendants' Motion to Dismiss is **DENIED without prejudice**.

[¶67]   Finally, it is further **ORDERED** Counsel for Plaintiffs shall file a jurisdictional supplement to provide a factual basis to establish each Plaintiffs' state of citizenship by March 15, 2024.

[¶68]   **IT IS SO ORDERED**.

DATED March 6, 2024.

Daniel M. Traynor, District Judge
United States District Court